## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

**TOTAL QUALITY LOGISTICS, LLC,**

               **Plaintiff,**                **Case No. 1:21-cv-695**
                                          **JUDGE DOUGLAS R. COLE**

    **v.**

**SUMMIT LOGISTICS GROUP, LLC, et al.,**

               **Defendants.**

### OPINION AND ORDER

This cause comes before the Court on Defendants Summit Logistics Group, LLC's ("Summit") and Nathan Ball's Motion to Transfer Venue to the Eastern District of North Carolina (Doc. 13) and Plaintiff Total Quality Logistics, LLC's ("TQL") Motion to Remand (Doc. 15). For the reasons explained further below, the Court **GRANTS** TQL's Motion to Remand (Doc. 15) and **REMANDS** this action to state court. Because the Court lacks subject matter jurisdiction over the action, the Court **DENIES AS MOOT** Defendants' Motion to Transfer Venue to the Eastern District of North Carolina (Doc. 13).

### BACKGROUND

This is the second time these parties (or at least most of these parties) have appeared before the Court in a dispute regarding the Court's subject matter jurisdiction over this action. Their first stint in federal court culminated on October 14, 2020, when this Court granted TQL's first Motion to Remand. *See Total Quality*

*Logistics, LLC v. Summit Logistics Grp., LLC*, No. 1:20-CV-519, 2020 WL 6075712, at *6 (S.D. Ohio Oct. 14, 2020) (hereinafter "*TQL I*").

Given the Court's (and the parties') familiarity with the underlying facts, the Court declines to expound on them at length here. The short version is this: Defendant Nathan Ball worked for Plaintiff TQL for approximately a year in 2018. (Compl., Doc. 2, #249). In accepting employment with TQL, Ball allegedly signed a noncompete agreement that, among other things, prohibited Ball from working with any TQL competitor or recruiting other TQL employees for one year after the end of his employment. (*Id.* at #249–50). Ball also agreed to keep confidential any trade secret or otherwise confidential information to which he was exposed while working for TQL, and agreed to pay TQL's attorneys' fees if it had to sue him to enforce the terms of the agreement. (*Id.*). TQL alleges that, after Ball voluntarily resigned his position with TQL, he went to work for Summit, which TQL alleges is a direct competitor. (*Id.* at #248, 250). TQL says Ball began with Summit on or about July 23, 2019—within a year (about 7 months) after leaving his job at TQL, thereby violating the terms of his noncompete.[1] (*Id.* at #250).

What is more interesting than the factual background, though—and more consequential to this Opinion—is this case's procedural history. As it often does, TQL initially filed a complaint seeking to enforce the non-compete covenant against its former employee (here Ball) and his new employer (here Summit) in Clermont County

---

[1] As the Court noted in its prior Opinion, the Complaint mistakenly states that Ball began working for Summit "on or about July 23, *2018*." (Compl., Doc. 2, #250 (emphasis added)). That date should be July 23, *2019. See TQL I*, 2020 WL 6075712, at *1 n.3.

Common Pleas Court, seeking injunctive and monetary relief. (*See id.* at #247, 255–56). Within thirty days after Summit was served, Summit removed the action to this Court, claiming the action fell within this Court's diversity jurisdiction. (Case No. 1:20-cv-519, Notice of Removal, Doc. 1). In particular, Summit stated it was a citizen of North Carolina, while TQL was a citizen of Ohio, and that the amount in controversy, including both damages and the value of the proposed injunctive relief, exceeded $75,000. (*See id.* at #2–3). Ball did not consent to that removal, but he didn't need to, as, at the time of removal, he had not been properly served in the action. *See TQL I*, 2020 WL 6075712, at *1 n.2 (citing 28 U.S.C. § 1446(b)(2)).

On August 25, 2020, TQL moved to remand the case to Clermont County, arguing that diversity jurisdiction was lacking because the amount in controversy did not exceed $75,000. (Case No. 1:20-cv-519, Mot. to Remand, Doc. 11). In support, TQL disputed Summit's claims about the jurisdictional amount. (*Id.* at #68). It also attached to its motion a Stipulation that purported to clarify that TQL was "not seeking, and [would] not accept, damages over $75,000," in aggregate, for economic damages, compensatory damages, punitive damages, attorneys' fees, and all other "forms of potential damages." (Case No. 1:20-cv-519, Stipulation, Doc. 11-1, #78). Summit, for its part, argued that the Stipulation was ineffective because it did not account for the fair value of the injunctive relief TQL sought. From that, Summit argued that a court "could potentially grant TQL" relief totaling more than $75,000. (Case No. 1:20-cv-519, Resp., Doc. 13, #89–90). It did not, however, offer any affirmative evidence to substantiate what the value of injunctive relief would likely

3

be, or, more to the point, that the combination of damages and the value of injunctive relief was likely to exceed $75,000.

After considering the parties' arguments, the Court granted TQL's Motion to Remand. Although agreeing with TQL that an unequivocal stipulation regarding the amount in controversy would have ended the matter, the Court concluded that Summit was correct that TQL's Stipulation failed to foreclose the possibility of an amount in controversy greater than $75,000, as the Stipulation spoke only to TQL's right to monetary relief. *TQL I*, 2020 WL 6075712, at *4. As such, the Stipulation failed to account for the value of TQL's desired prospective injunctive relief, which counts toward the jurisdictional limit. *Id.* at *5. Although the Court concluded that TQL's Stipulation could not carry its motion, however, the Court nevertheless remanded the case. The Court did so because Summit had failed to carry *its* burden— to establish by a preponderance of the evidence that the jurisdictional amount in fact was met. *Id.* On that front, Summit had offered the Court "nothing but '[m]ere speculation' as to the jurisdictional amount." *Id.* at *6. In the absence of affirmative evidence, the Court concluded that Summit had failed to establish that the case belonged in federal court. And, with the amount in controversy "at best uncertain," the Court resolved its doubts about the propriety of removal in favor of remand. *Id.*

With the case back in state court, TQL continued its efforts to serve Ball. It succeeded on October 6, 2021, only to be met with another notice of removal, this time from Ball, again asserting diversity jurisdiction pursuant to 28 U.S.C. § 1332. (*See* Notice of Removal, Doc. 1, #1).

4

Soon after removing the action to this Court, Defendants filed a motion to transfer venue to the Eastern District of North Carolina. (Doc. 13). In addition to opposing that motion to transfer, TQL filed another motion to remand (Doc. 15), which Defendants opposed. In connection with its Motion to Remand, TQL filed another stipulation, which asserts that "the relief it seeks and will accept, is limited to judgment of the following in a cumulative amount that is less than $75,000.00, inclusive of compensatory damages, punitive damages, attorney's fees, *and the fair value of any injunctive relief*." (Stipulation, Doc. 14, #329 (emphasis added)).

Both motions are now fully briefed and before the Court. (*See* Docs. 16, 20, 21, 23).

## LEGAL STANDARD

When a defendant removes an action from state court to federal court, the federal court has jurisdiction only if it would have had original jurisdiction over the action. 28 U.S.C. § 1441(a). Here, Ball claims this matter falls within the Court's original jurisdiction under 28 U.S.C. § 1332(a), that is, the diversity jurisdiction. For that to be true, two conditions must be met: (1) the parties must be completely diverse; and (2) the amount in controversy must exceed $75,000. *Id.* Importantly, though, removal jurisdiction is assessed based on the facts as they existed at the time of removal. *See Harper v. AutoAlliance Int'l, Inc.*, 392 F.3d 195, 210 (6th Cir. 2004). And courts must also be mindful that, when jurisdiction upon removal is uncertain, federal courts must construe the removal statutes strictly, resolving all doubts in

favor of remand. *See Brierly v. Alusuisse Flexible Packaging, Inc.*, 184 F.3d 527, 534 (6th Cir. 1999).

## LAW AND ANALYSIS

Although they dispute much, all parties to this action agree on at least one thing: this Court is not the proper forum. Defendants, having removed this action from state court, now seek a transfer of venue to the Eastern District of North Carolina, where Ball lives and works and where Summit is incorporated. (*See* Mot. to Transfer, Doc. 13, #310–11; Scholar Aff., Notice of Removal Ex. D, Doc. 1-6, #233–34). Plaintiff TQL, on the other hand, wishes to restore its original choice of forum by (again) directing the action back to the Clermont County Court of Common Pleas. (*See* Mot. to Remand, Doc. 15). Though Defendants filed their Motion to Transfer before TQL filed its Motion to Remand, the Court will address the latter first, because it raises a threshold issue: if, as TQL asserts, this Court lacks subject matter jurisdiction, that would render "any decree in the case void and the continuation of the litigation in federal court futile." *Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 549-50 (6th Cir. 2006) (citation omitted). Thus, without a conclusive determination of that issue, an order transferring the case to another federal court would merely pass the proverbial buck.

**A.    The Court Remands This Action To State Court Because TQL Has Filed An Unequivocal, Binding Stipulation Clarifying That The Amount In Controversy Is Less Than The Jurisdictional Threshold.**

A party may remove an action from state court if the federal court to which the action is removed would otherwise have had original jurisdiction. 28 U.S.C. § 1441(a).

6

In his Notice of Removal, Ball asserts that this action is properly in federal court based on the diversity jurisdiction. (Notice of Removal, Doc. 1, #2–4). A party asserting diversity jurisdiction must make two showings: (1) that the parties are completely diverse; and (2) that the case meets the jurisdictional threshold—above $75,000. 28 U.S.C. § 1332(a). As was true the last time these parties appeared before the Court, the issue of complete diversity is undisputed; thus, the Court need consider only whether the amount in controversy requirement is met.

As a general rule, a plaintiff is the master of his or her own complaint, so a plaintiff wishing to avoid removal can sue in state court for less than the jurisdictional amount, thereby preventing removal even if the parties are diverse. *Heyman v. Lincoln Nat'l Life Ins. Co.*, 781 F. App'x 463, 469 (6th Cir. 2019); *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 294 (1938) ("If [a plaintiff] does not desire to try his case in the federal court he may resort to the expedient of suing for less than the jurisdictional amount, and though he would be justly entitled to more, the defendant cannot remove.").

Some States, though, including Ohio, make it difficult for plaintiffs to avoid removal on these grounds. That is true in two regards. First, under Ohio civil rules, the only statement that a plaintiff is generally allowed to make regarding alleged damages in a complaint is that the amount sought is more than $25,000. Ohio Civ. R. 8(A). That category, of course, includes amounts both below and above the jurisdictional threshold. Second, even if a plaintiff ignores that stricture and includes an allegation in the complaint capping the alleged damages (e.g., "plaintiff seeks less

7

than \$75,000"), such limitations are not enforceable under Ohio law. That is, plaintiffs can recover more in damages in an Ohio court than they allege in their complaints. *See* Ohio Civ. R. 54(C); *Bower v. Am. Cas. Co.*, Case No. 99-4102, 2001 U.S. App. LEXIS 18053, at \*7 (6th Cir. 2001); *see also Shankle v. Egner*, Nos. 2011 CA 00121, 2011 CA 00143, 2012 WL 1622459, at \*5 (Ohio Ct. App. May 7, 2012) ("Civ. R. 54 authorizes courts to grant the relief to which a party is 'entitled,' regardless of whether the party has demanded the relief in the pleadings.").

As a result, a defendant facing suit in Ohio court is free to remove an action, even if the complaint purports to limit relief to less than \$75,000, so long as the defendant can assert in good faith in its removal papers that the amount in controversy in fact exceeds the jurisdictional threshold. The removal statute puts it this way:

> If removal of a civil action is sought on the basis of the jurisdiction conferred by section 1332(a), the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy, except that—the notice of removal may assert the amount in controversy if the initial pleading seeks … a money judgment, but the State practice … permits recovery of damages in excess of the amount demanded.

28 U.S.C. § 1446(c)(2). As described above, Ohio is one State that "permits recovery of damages in excess of the amount demanded." *Id*.

Faced with removal, then, a plaintiff desiring remand in that situation has two options. First, the plaintiff can respond to the removal by filing in the federal action a stipulation that clarifies that the amount in controversy is less than the jurisdictional threshold (i.e., that states that the amount that the plaintiff is seeking and will accept is less than \$75,000). So long as the language of the stipulation is

sufficiently unequivocal and binding, that stipulation deprives the federal court of subject matter jurisdiction. *See Heyman*, 781 F. App'x at 469–70. Second, the plaintiff can move for remand, disputing the allegation in the removal papers regarding the jurisdictional amount. If the plaintiff opts for this latter course, the defendant, as the party seeking to keep the matter in federal court, then has the burden of showing, by a preponderance of the evidence, that the jurisdictional amount is met. *See* 28 U.S.C. § 1446(c)(2)(B).

In response to Summit's first Notice of Removal, TQL availed itself of both options. That is, TQL filed a stipulation purporting to clarify the amount in controversy, and also argued alternatively that Summit had failed to establish that the amount in controversy exceeded the jurisdictional amount. As described above, the Court rejected TQL's first argument, finding that TQL's failure to account for the value of injunctive relief rendered its stipulation defective, but accepted its second argument, agreeing that Summit had failed to carry its affirmative burden to show that the amount in controversy in fact exceeded $75,000. Thus, the Court sent the matter back to state court.

But TQL then completed service on Ball in the state court action, and he then invoked his own right to remove, again on diversity grounds. (*See* Notice of Removal, Doc. 1). In response to this second shot at removal, TQL has again filed a purportedly binding stipulation regarding the amount in controversy. This time around, though, TQL leaves no room for doubt: it "stipulates that the relief it seeks and will accept, is limited to judgment of the following in a cumulative amount that is less than

9

$75,000.00, inclusive of compensatory damages, punitive damages, attorney's fees, *and the fair value of any injunctive relief*." (Stipulation, Doc. 14, #329 (emphasis added)). This appears to remedy the ambiguity the Court observed in TQL's prior stipulation. Indeed, Defendants do not argue otherwise. (*See* Resp., Doc. 21, #455 (observing that the stipulation "might … be sufficient to defeat the amount in controversy")). Thus, the Court concludes that TQL has submitted the type of unequivocal, binding stipulation that can, in certain cases, establish a lack of subject matter jurisdiction. *See Shupe v. Asplundh Tree Expert Co.*, 566 F. App'x 476, 481 (6th Cir. 2014) ("An actual limitation on the amount of a potential judgment 'is essential to any such stipulation.' 'To merely say that one will not accept money in excess of a certain amount limits neither the judgment nor the demand.'" (internal citations omitted) (quoting *Egan v. Premier Scales & Sys.*, 237 F.Supp.2d 774, 778 (W.D. Ky. 2002))).

But there is an additional wrinkle. Although such an unequivocal, binding stipulation can defeat diversity jurisdiction, courts will typically credit such a stipulation only when it is the "first time" a plaintiff "provides specific information about the amount in controversy." *See, e.g.*, *id.* Latching on to that latter principle, Defendants argue that TQL's latest stipulation is ineffective because it is "not [TQL's] first statement of the amount in controversy." (Resp., Doc. 21, #455). Specifically, Defendants contend that the Court cannot consider this more recent stipulation because TQL offered a previous stipulation—in connection with the prior removal— that failed to unequivocally foreclose a judgment of more than the jurisdictional

amount. TQL disagrees, arguing instead that the stipulation it offered in connection with the first removal attempt should not have preclusive effect. (*See* Reply, Doc. 23, #490–93). Rather, TQL emphasizes that "this case involves a *new* … removal filed by a *new* party." (*Id.* at #490 (emphasis in original)).

Although neither party has offered a case arising in the exact procedural posture here (i.e., successive removals), the Sixth Circuit considered the effect of multiple post-removal statements in *Heyman v. Lincoln National Life Insurance Co.*, 781 F. App'x 463 (6th Cir. 2019). There, the plaintiff sued in Kentucky state court. *Id.* at 467. Likely attempting to avoid removal, the plaintiff prayed for an award of damages "not to exceed $75,000." *Id.* The defendant removed the case anyway. Post-removal, the plaintiff again attempted to limit his relief by restating in his motion to remand "the prayer for relief from his complaint … and [] claim[ing] that the wording of that prayer for relief must be understood to have 'clearly stipulated [that] he would not accept more than $75,000.'" *Id.* at 470. But the Sixth Circuit found that this statement lacked the unequivocal and binding characteristics necessary to secure remand. *Id.* ("To merely say that one will not accept money in excess of a certain amount limits neither the judgment nor the demand." (quoting *Egan*, 237 F. Supp. 2d at 778)).

That was not the end of the matter, though, as the plaintiff in *Heyman* had also submitted an additional stipulation to the district court (before the appeal occurred) that contained the unequivocal wording that caselaw had found sufficient to limit a plaintiff's recovery. *Id.* The Sixth Circuit, though, found this additional

11

stipulation lacking, as well. The problem was not the wording, but rather that this stipulation "was not [the plaintiff's] *first* post-removal statement regarding the damages sought." *Id.* According to the court, because the plaintiff had made a more equivocal and less binding statement in his motion to remand—this later "unequivocal rejection of damages exceeding $75,000" could not "serve as a retroactive, per se repudiation of federal jurisdiction." *Id.* Defendants assert that TQL's statement here is likewise not TQL's "first post-removal statement," as that "first" statement instead occurred in connection with the first removal. (Resp., Doc. 21, #455).

The Court disagrees, concluding that the present case is distinguishable from *Heyman.* There, the Sixth Circuit declined to rely on Heyman's subsequent stipulation because it "was not his *first* post-removal statement regarding the damages sought" in connection with the defendant's single attempt at removal. *Heyman,* 781 F. App'x at 470 (emphasis in original). The stipulation here, by contrast, *is* TQL's first post-removal statement regarding the amount in controversy, *at least as to the current attempt to remove.* Moreover, at the instant of the removal at issue (i.e., the second removal), it still was not at all clear, based either on TQL's original Complaint or its first stipulation in this Court (in connection with the earlier removal), that the amount in controversy exceeded the jurisdictional threshold. Indeed, the Court concluded in its prior remand order that the amount in controversy was "at best uncertain." *TQL I*, 2020 WL 6075712, at *6. And, so far as the Court can

12

tell, nothing occurring between that remand and the subsequent removal clarified that amount.

Those distinctions matter. To see why, start from the proposition that there is nothing wrong with multiple, successive removals in the first instance. *See Robertson v. U.S. Bank, N.A.,* 831 F.3d 757, 762 (6th Cir. 2016) ("[W]e have recognized that ... one defendant's failed attempt to remove [does] not inhibit a later-served defendant's opportunity to remove. Now that Congress has codified this position, there is no room for doubt."); *Benson v. SI Handling Sys., Inc.*, 188 F.3d 780, 782 (7th Cir. 1999) ("Nothing in [28 U.S.C.] § 1446 forecloses multiple petitions for removal."). For example, imagine a multi-defendant case where defendants remove on diversity grounds, but the federal court determines that complete diversity is lacking, as one of the defendants who had been properly served in the state court action at the time of removal is non-diverse. If, after remand, the plaintiff dismisses that non-diverse defendant, the remaining defendants can again remove—at least so long as the state court action had not been pending for more than a year at the time of the second removal. *Benson*, 188 F.3d at 782–83; 28 U.S.C. §§ 1446(b), (c). And, in assessing that second removal, it is the facts *at the time the second removal occurred* that matter for determining diversity. *See Benson*, 188 F.3d at 782–83 (noting that, while "[a] premature removal may lead to a perfectly justified remand," that initial remand order may be "revisited … when intervening events justify"). To generalize that a bit,

when facts arise that provide a new basis for seeking removal, it is the facts that exist at the time of the second removal that control for jurisdiction purposes.

Let's apply that principle here. When TQL completed service on Ball, that was a change in circumstances, and it gave the newly joined defendant (Ball) the right to seek removal. *See* 28 U.S.C. § 1446(b)(2). Thus, in assessing both diversity and the jurisdictional amount, it is the facts as they exist at the time of this second removal that control. Here, after the case was removed the second time, TQL, consistent with this Circuit's caselaw, filed an unequivocal and binding stipulation limiting TQL's recovery, inclusive of any injunctive relief, to less than $75,000. (Stipulation, Doc. 14, #329–30). Because TQL's complaint is necessarily vague regarding the amount in controversy, and because this stipulation is TQL's first post-removal statement on the issue in connection with the current removal, the Court considers this most recent stipulation a clarification, rather than a reduction, of the amount in controversy. This Court therefore lacks subject matter jurisdiction, and must remand the case to the state court from which it was removed.

A closer look at *Heyman*'s conceptual underpinnings also confirms why the Court should not extend *Heyman*'s first-statement principle to cover the successive removal setting here. In a sense, *Heyman* reflects a kind of waiver or forfeiture rule. That is, as a general matter, when one party seeks some specific form of relief from a court (e.g., the removing party in *Heyman*, who was seeking federal jurisdiction over the matter), the party opposing that result (e.g., the party instead seeking remand) is expected to put their best foot forward on the first go-around. Imagine, for example,

14

a case where a defendant moves for summary judgment, and the plaintiff opposes on grounds A, B, and C. If the court were to conclude that summary judgment is warranted, or in other words were to reject those three arguments, the plaintiff typically will not be heard to argue that it would now also like to raise arguments D and E. Rather, the court will say that the plaintiff waived or forfeited those arguments by not including them in the plaintiff's original opposition.

*Heyman* could be understood as merely applying that same principle to the amount-in-controversy element of diversity jurisdiction. In that setting, it is the removing defendant's burden to show that the amount in controversy is met. If the court concludes that the removing defendant has met that burden, over the plaintiff's statement attempting to clarify that amount—and thus denies the plaintiff's remand request—the plaintiff cannot then respond to the court's ruling with a new statement seeking to provide additional information or argumentation that the plaintiff wishes it had included in its first statement.

But that reasoning would not apply in the context of a new removal like the one here. The newly removing party has the burden of showing—at the time of the new removal—that both the complete diversity and amount in controversy elements are met. Thus, the party resisting that new removal should likewise have the ability to provide its first argument—based on the facts as they exist at that time—that

those elements are not met. But a broad reading of the first-statement principle from *Heyman* would foreclose that possibility.[2]

Nor is this a case like *Rogers v. Wal-Mart Stores, Inc.*, 230 F.3d 868, 870 (6th Cir. 2000), another case on which Defendants rely in opposing remand (*see* Resp., Doc. 21, #454–55). There, Rogers initially sued Wal-Mart in Tennessee state court for approximately $950,000. *Id.* Wal-Mart promptly removed the case to federal court, but the parties stipulated to a dismissal without prejudice shortly thereafter. *Id.* Rogers then filed a new complaint in state court based on the same occurrence. *Id.* This time, however, Rogers specified in the complaint that she sought no more than $75,000. *Id.* Wal-Mart removed the case again, asserting diversity jurisdiction based on sworn interrogatories in the first case in which Rogers estimated her damages at $447,000. *Id.* Rogers moved to remand and filed a stipulation asserting that she "had no intention of seeking additional damages" and that she had "instructed [her] attorney to stipulate that [her] demand for damages will not exceed $75,000 at any time in the future."[3] *Id.* The district court denied her motion to remand, and the Sixth Circuit affirmed, concluding that "events occurring after removal that *reduce* the amount in controversy do not oust jurisdiction." *Id.* at 872 (emphasis added). It again

---

[2] This first-statement principle might also be directed at the wily plaintiff who, after having tacitly consented to litigating in federal court, seeks to use a delayed stipulation to remand the case when the federal proceedings "begin[] to look unfavorable." *See Rogers*, 230 F.3d at 872. But this waiver-by-delay rationale does not apply in a case like this, either, because TQL attempted to clarify the amount in controversy at its first opportunity after each removal.

[3] Although it did not factor into the *Rogers* court's decision, the Court notes that this language would in any event have likely failed under the "unequivocal and binding" requirements articulated in cases such as *Shupe*, 566 F. App'x at 481–82.

16

emphasized in the next sentence that "a post-removal stipulation *reducing* the amount in controversy to below the jurisdictional limit does not require remand to state court."[4] *Id.* (emphasis added).

In *Rogers*, then, the plaintiff had previously made statements, both in the original complaint and in sworn discovery responses, indicating that the amount in controversy exceeded $75,000. Having clearly stated the amount in controversy, based on the facts then at issue, the plaintiff could not file a new suit based on those exact same facts, while at the same time asserting that the amount in controversy had changed.

Nothing like that happened here (nor, for that matter, in *Heyman*). Rather, TQL has consistently maintained that it has never sought more than the jurisdictional amount. To be sure, TQL's vague request in the state-court complaint certainly left open the possibility of recovery exceeding the jurisdictional amount, as did the previously-filed stipulation. But, unlike *Rogers*, TQL's stipulation here is not seeking to "walk back" a previous statement in which TQL had clearly indicated that the amount in controversy *exceeded* the jurisdictional threshold. That is, TQL's stipulation in connection with the second removal does not *contradict* the stipulation it filed during the first removal. *See Baldori v. Delta Air Lines, Inc.,* No. 1:11-CV-102,

---

[4] A very broad reading of *Rogers* might suggest that a court can *never* consider a plaintiff's post-removal conduct in determining whether it has subject matter jurisdiction. But that understanding would be inconsistent with Sixth Circuit cases decided both before and after *Rogers. See Cole v. Great Atl. & Pac. Tea Co.,* 728 F. Supp. 1305, 1309 (E.D. Ky. 1990); *Shupe,* 566 F. App'x at 481; *Heyman,* 781 F. App'x at 469; *see also Manning v. State Farm Fire & Cas. Co.,* No. CIV.A. 10-352-KSF, 2011 WL 146391, at *3 (E.D. Ky. Jan. 18, 2011) ("[T]he breadth of the Sixth Circuit's holding in *Rogers* remains unclear. *Rogers* does not hold that post-removal stipulations prevent a district court from remanding a case.").

2011 WL 1212069, at *3 (W.D. Mich. Mar. 29, 2011) ("Unlike *Rogers*, in the case before this Court, Plaintiff's stipulation to cap his damages at $75,000 does not contradict any previous statements by Plaintiff regarding the value of his damages. … Plaintiff has never claimed damages in excess of $75,000, and his stipulation clarified his claim rather than reducing it."). Thus, to the extent that *Heyman*'s "first statement" rule arises from estoppel concerns, those concerns, which may well be present in a case like *Rogers*, would not support applying that rule here.

Because the Court concludes that it lacks subject matter jurisdiction and that remand is therefore appropriate, the Court does not consider Defendants' Motion to Transfer Venue to the Eastern District of North Carolina (Doc. 13).

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** TQL's Motion to Remand (Doc. 15) and **REMANDS** this action to the Court of Common Pleas for Clermont County, Ohio. Because the Court lacks subject matter jurisdiction over the action, the Court **DENIES AS MOOT** Defendants' Motion to Transfer Venue to the Eastern District of North Carolina (Doc. 13).

**SO ORDERED.**

June 7, 2022
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**